KIYOKURO OKIMURA v. ACHESON, Secretary of State.

Civ. No. 1027.

United States District Court
D. Hawaii.

Oct. 6, 1952 and April 14, 1953.

Fong, Miho, Choy & Chuck, Honolulu, Hawaii, A. L. Wirin and Fred Okrand, Los Angeles, Cal., for plaintiff.

A. William Barlow, U. S. Atty., District of Hawaii and Winston C. Ingman, Asst. U. S. Atty., District of Hawaii, Honolulu, Hawaii, for defendant.

McLAUGHLIN, Chief Judge.

This case was earlier reported in D.C., 99 F.Supp. 587.

As the decision therein held unconstitutional Section 801(c) and (e) of Title 8 United States Code Annotated, the defendant took a direct appeal to the Supreme Court. The Supreme Court vacated the judgment and remanded the case for more specific findings as to the circumstances attending the plaintiff's service in the Japanese Army and voting in the Japanese elections and the reasonable inferences to be drawn therefrom. Acheson v. Kiyokuro Okimura, 1952, 342 U.S. 899, 72 S.Ct. 293, 96 L.Ed. 674.

In accordance with the Supreme Court's mandate, this Court has made further specific findings of fact and conclusions of law, upon which a new judgment has been entered in favor of the plaintiff, Kiyokuro Okimura. These findings of fact and conclusions of law, filed on October 6, 1952, and amended as of April 9, 1953, are made a part hereof.

Findings of Fact upon Remand from
United States Supreme Court.

1. The plaintiff was born at Kauai, Hawaii, United States of America, in 1921.

2. At birth he became a United States citizen, and also a subject of Japan.

3. At age 4, plaintiff was taken to Japan for educational purposes, remaining there until 1932.

4. In 1934, plaintiff returned to Japan to further his Japanese education so that he might return to Hawaii and teach in a Japanese language school.

5. In 1934, plaintiff went to Japan, not upon a United States passport, but possessed only of a certificate of citizenship, Hawaiian Islands, issued by the United States Immigration Service pursuant to regulations.

6. At no time did plaintiff register in Japan as an American citizen with any United States consul.

7. In 1939, as some of his Middle School classmates who were United States citizens decided to return to the United States to avoid the Japanese Military Conscription law, plaintiff joined them, but had proceeded only as far as Kobe, Japan, when his mother overtook him and compelled his return to school. In fulfillment of his parents' desires, plaintiff was graduated from Middle School, and thereafter attended, until mid 1942, Normal School.

8. At Middle School plaintiff was required to take an officer candidates' examination, and as he rated but a "B", due to his intentionally poor showing, he successfully avoided being rated as an officer candidate for the Japanese Army.

9. Up to 1942, the Japanese government paid one half of a student's tuition at Normal School; thereafter the government paid it in full.

10. Up to 1942, unless repaid, the government could compel a graduate to accept a teaching assignment; thereafter no such option existed, and plaintiff was ordered to and did teach at Miwa.

11. In mid-June 1942, plaintiff received his notice to report for a Japanese Army physical examination.

12. Fearing the military police and that he would be shot or imprisoned, plaintiff reported for his physical. He, however, approached the colonel in command and asked to be excused as a United States citizen. This request infuriated the officer who slapped the plaintiff and called him an "ideological criminal."

13. Plaintiff passed his physical, and was classified 1–B.

14. Plaintiff was inducted into the Japanese Army in February 1943, seeing active service in China until captured in August 1945. He was returned to Japan in 1946. Prior to being separated from the Japanese Army, plaintiff had been promoted to the rank of sergeant.

15. When released, plaintiff returned to the parental residence in Japan, and thereafter resumed teaching school while awaiting further instructions when possible from his father who was, and had been during the war, in Hawaii.

16. For some years prior to Pearl Harbor and until the surrender of Japan in 1945, Japan and its people were under the control of the military authorities of Japan, and the Secret or Thought Police, and the Special Higher Police; and during that period of time the people of Japan were generally in fear of them and particularly in fear of physical punishment from the Japanese military authorities, the Secret Police and the Special Higher Police.

17. In order to teach in postwar Japan, plaintiff had to be and was "cleared" by SCAP.

18. The war having blighted plaintiff's prospect of ever teaching in a Japanese language school in Hawaii, plaintiff took his father's advice and trained for a year to become a Buddhist priest.

19. In 1947, in Japan, plaintiff voted because General MacArthur had urged all to vote, and because he had heard that nonvoters would lose their rice rations.

20. Although rice has long been recognized as an essential of the diet of the people of Japan, it is not essential to sustain life; and the plaintiff would not have starved as a result of loss of rice rations.

21. An intensive campaign was conducted by the occupation authorities to stimulate participation in the elections and to encourage all the inhabitants to take part in the democratic process. Those who worked at cross purposes were considered to be in sympathy with the officials who had been purged by the occupation authorities. The occupation authorities had carried out an intensive program to stimulate participation in the elections.

22. In 1949, being ready to return to Hawaii as a Buddhist priest, plaintiff applied for a United States passport. His application was denied on the ground that he lost his United States citizenship by serving in the Japanese Army.

23. The defendant, Dean Acheson, is the Secretary of State of the United States. As such, he is the head of the State Department.

### Conclusions of Law upon Remand from United States Supreme Court

█ 1. Subsection (c) and (e) of Section 801 of Title 8·United States Code Annotated, are unconstitutional.

█ 2. As a citizen of Japan, living in Japan, the plaintiff was subject to Japanese law and under compulsion to comply with Japanese law. His compliance with the conscription law of Japan did not result in a loss of United States citizenship.

3. The service of the plaintiff in the Japanese Army was not a free or voluntary act; but was the result of fear, both of the penal sanctions of the Japanese conscription law, as well as fear that physical punishment would be inflicted upon him by the Japanese military authorities.

4. As a citizen of Japan, living in Japan, the plaintiff was under obligation to comply with the laws of Japan. His voting in the general elections of Japan in 1947 did not result in a loss of his United States citizenship, although his voting was not the result of legal duress.

5. The plaintiff is entitled to a Declaration and Judgment that he is a citizen of the United States, and that he did not lose his United States citizenship because of his service in the Japanese Army from 1943 to 1945, nor by virtue of his voting in the Japanese elections in 1947.

### Opinion

This Court adheres to its belief that subsections (c) and (e) of Section 801 of Title 8 United States Code Annotated, are unconstitutional. No discussion on this matter is necessary here since the Court's rationale was previously presented in Kiyokuro Okimura v. Acheson, D.C.1951, 99 F.Supp. 587.

It is further held that the plaintiff, being a national both of the United States and of Japan, living in Japan, did not lose his American citizenship by his service in the Japanese Army from 1943–1945 nor by his voting in Japanese elections in 1947. Dual nationality or citizenship is a concept little understood. However it is "a status long recognized in the law". To-moya Kawakita v. United States, 1952, 343 U.S. 717, 723, 72 S.Ct. 950, 955, 96 L.Ed. 1249. Our courts have grappled with the ideas of dual nationality and expatriation since the early Nineteenth Century. See Talbot v. Jansen, 1795, 3 Dall. 133, 1 L. Ed. 540; Inglis v. Trustees of the Sailor's Snug Harbour, 1830, 3 Pet. 99, 7 L.Ed. 617.

██ "The concept of dual citizenship recognizes that a person may have and exercise rights of nationality in two countries and be subject to the responsibilities of both. The mere fact that he asserts the rights of one citizenship does not without more mean that he renounces the other." Tomoya Kawakita v. United States, supra, 343 U.S. at pages 723–724, 72 S.Ct. at page 956. Being a citizen of Japan as well as of the United States, but living in Japan, the plaintiff was subject to and under compulsion and obligation to comply with the Japanese laws. His complying with the Japanese conscription law and voting in the general elections of Japan were acts commensurate with those of Japanese citizens living in Japan. Without more, these acts cannot amount to renunciation of United States citizenship acquired by reason of birth.

Tomoya Kawakita v. United States, supra, is the opposite side of the coin. In that case, 343 U.S. at page 734, 72 S.Ct. at page 961, Justice Douglas states:

"One who becomes a citizen of this country by reason of birth retains it, even though by the law of another country he is also a citizen of it. * * American citizenship, until lost, carries obligations of allegiance as well as privileges and benefits."

Moreover a dual citizen cannot shed his American citizenship at his convenience to avoid a charge of treason.

Despite this Court's conclusion that plaintiff's voting in the Japanese elections was not the result of legal duress, the decision in Acheson v. Mariko Kuniyuki, 9 Cir., 1951, 189 F.2d 741, rehearing denied 9 Cir., 1951, 190 F.2d 897, certiorari denied 1952, 342 U.S. 942, 72 S.Ct. 554, 96 L.Ed. 701, is not controlling. The ruling as to plaintiff's voting in this case is

grounded on the unconstitutionality of Section 801(e) of Title 8, United States Code Annotated, and the fact of plaintiff's status as a dual citizen living in Japan, thus being obligated to comply with the laws of Japan.

Petition granted.